UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:23-CV-22626-RAR
CASE NO. 1:23-CV-22630-RAR

J'CAM INVESTMENTS LLC,

Plaintiff,

v.

GREAT LAKES INSURANCE SE,

Defendant.
_______________________________________/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS OF EXPERT WITNESS MICHAEL SAXE**

Plaintiff J'Cam Investments LLC ("J'Cam") responds in opposition to the motion to exclude the opinions of J'Cam's engineering expert, Michael Saxe, [DE 54] filed by Defendant Great Lakes Insurance SE ("Great Lakes").

## INTRODUCTION

Great Lakes' eleven-page *Daubert*[1] motion contains just one paragraph of argument. [DE 54, pp. 8-9]. Great Lakes contends that J'Cam's engineering expert, Michael Saxe, should not testify at trial because (a) he did not perform a physical inspection of the property at issue; (b) in forming his opinions he relied, in part, on evidence and reports created by other witnesses; and (c) his testimony will not assist a jury because his *expert report* "offers no supportable conclusions of its own beyond copying and pasting from other sources…." [DE 54, pp. 8-9].

None of Great Lakes' arguments has legal merit: (a) a site inspection was unnecessary because the property was completely repaired when Mr. Saxe was retained so an inspection would

[1] *Daubert v. Merrell Down Pharmaceuticals*, 509 U.S. 579 (1993).

not have shed any new light on his opinions; (b) there is nothing improper about Mr. Saxe using information gathered by others (e.g., property inspection reports, plumbing reports, and photographs and videos of the property) to form his opinions—these are the types of documents and information typically relied on by engineering experts in forming causation opinions; and (c) Mr. Saxe's testimony will help the jury because he will explain how the evidence, taken together, shows what caused damage to J'Cam's property, and the extent of those damages. For these reasons, and as further detailed next, the motion should be denied.

## MEMORANDUM OF LAW

### Standard of Review

**Daubert Standard.** The Eleventh Circuit has "distilled" the well-known *Daubert* and *Kumho*[2] factors into three requirements: "First, 'the expert must be qualified to testify competently regarding the matter he or she intends to address'; second, the expert's 'methodology must be reliable as determined by a *Daubert* inquiry'; and third, the expert's 'testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue.'" *Adams v. Laboratory Corp. of Am.*, 760 F.3d 1322, 1328 (11th Cir. 2014). Under this three-step inquiry, the *Daubert* analysis is meant to be "flexible" — "many factors bear on the inquiry, and we do not presume to set out a definitive checklist or test[.]" *United States v. Brown,* 415 F.3d 1257, 1267–68 (11th Cir. 2005) (quoting *Daubert at 1175*).

Great Lakes contests only the second and third prongs of *Daubert*—i.e., Mr. Saxe did not base his opinions on a reliable methodology, and his testimony will not help the jury. We provide a brief recitation of the law on these prongs, then explain why Great Lakes is wrong.

[2] *Kumho Tire v. Carmichael,* 119 S.Ct. 1167 (U.S. 1999).

**Reliability.** Generally, courts "may determine the reliability prong under *Daubert* based primarily upon an expert's experience and general knowledge in the field." *Adams v. Laboratory Corp. of Am.*, 760 F.3d 1322, 1340 (11th Cir. 2014) (Garza, concurring). Additionally, the court "must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *U.S. v. Frazier*, 387 F.3d 1244, 1261–62 (11th Cir. 2004).

While the Court is vested with a gatekeeping function to keep unreliable and irrelevant information from the trier of fact, it should not "supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Adams*, 760 F.3d at 1334 (internal quotations omitted). *Daubert* requires only that the principles and methods that experts use be *reliable*, not that they be infallible or reach the limit of all human ability. Frazier, 387 F.3d at 1293–94 ("The admissibility standard is a liberal one, … and [a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.").

Importantly, whether an opinion is reliable under *Daubert* is decided case-by-case—there cannot be a one-size-fits-all analysis. *See Rothschild v. Great N. Ins.,* No. 21-CV-23148-COOKE, at *14 (S.D. Fla. Oct. 18, 2022) ("The applicability of Daubert factors in assessing reliability in any given case will depend on the nature of the issue, the expert's particular expertise, and the subject of his testimony.") (cleaned up, internal citation and quotation marks omitted).

Michael Saxe, PE, is J'Cam's engineering expert. [DE 54-1, p. 1]. Mr. Saxe will testify at trial about the cause and extent of property damage suffered by J'Cam. *Id.* Mr. Saxe relied on the following materials in forming his opinions:

1. Forensic Engineering, Damage Assessments for Residential and Commercial Structures, 2013 by Taylor & Francis Group, LLC.
2. McGraw-Hill Co., Architectural Forensics, 2008 by Sam A. A. Kubba, Ph.D., AIA, RIBA.
3. Standard and Reference Guide for Professional Water Damage Restoration I, IICRC S500, 4th Edition.
4. Gypsum Association, Assessing Water Damage to Gypsum Board, GA-231-2019.
5. Mapei Technical Bulletin 011105.
6. Johns Eastern Company Inc., Report #1 dated November 1, 2021.
7. Johns Eastern Company Inc., Report #1 dated November 15, 2021.
8. WaterBAN Restoration, Estimate and Photo Sheet dated November 16, 2021.
9. Joe Cole Plumbing Corp., Plumbers Report dated January 15, 2022.
10. Johns Eastern Company Inc., Report #2 dated January 7, 2022.
11. Johns Eastern Company Inc., Report #3 dated January 21, 2022.
12. Johns Eastern Company Inc., Report #4 dated March 23, 2022.
13. Johns Eastern Company, Inc., Field Adjuster Photos dated March 23, 2022.
14. Johns Eastern Company Inc., Report #6 dated June 6, 2022.
15. All 4 One Construction & Plumbing Inc., Plumbers Report including Sewer.
16. Scope Videos dated October 7, 2022.
17. Indoor Environmental Restorations Now Inc., Affected Material Removal.
18. Invoice dated October 27, 2021.
19. Johns Eastern Company, Inc., Field Adjuster Photos dated October 31, 2022.
20. Southern Public Adjusters, Estimate (Unit 1) dated November 10, 2022.
21. Southern Public Adjusters, Estimate (Unit 3) dated November 10, 2022.
22. BuildFax Permit History Report 2024.
23. 2023 Florida Building Code, Eighth Edition.
24. Miami-Dade County Property Appraiser, 2024.

[DE 54-2, pp. 4-5].

Great Lakes argues that, because Mr. Saxe did not perform an in-person inspection of J'Cam's property, his opinions about the cause of J'Cam's property damages is unreliable and inadmissible. But *Daubert* did not require Mr. Saxe to perform a site inspection of the property to render opinions about what caused damage to the property. *See Carideo v. Whet Travel, Inc.*, No.

16-23658-CIV-GOODMAN, at *23 (S.D. Fla. Mar. 16, 2018) ("The fact that an expert did not personally inspect the scene of an incident … is not by itself determinative [of reliability because] personal inspections are not necessarily required.") (gathering cases).

In his deposition, Mr. Saxe explained why a site inspection was unnecessary—i.e., by the time he was retained, J'Cam had completed all repairs to the property:

> [A]s I mentioned, the repairs and replacements were already performed by the time I would've been able to do the inspection. So I was still able to review all the documentation included in this case and form my opinions. So, you know, at that time, I don't think an inspection was fully necessary, no.

[DE CITE].

Mr. Saxe testified that he formed his opinions on what caused the damage to J'Cam's property based on his review of the relevant evidence in the case, including inspection reports and videos and photographs of the property, and by applying well-established engineering principles to that evidence:

> I reviewed documentation provided by plumbers, plumbers' reports, videos, as well as photographic evidence, documentation provided by adjusters as well. And within that adjuster's report, there's statements from the tenants as well. So all of that, as part of my investigation, I was able to verify that.

[DE 54-3, p. 37, line 25 to p. 38, line 6].

> I reviewed all the documents that were provided. I compared the two plumbers' reports, and made sure that the facts and data applied within those reports matches what was seen in other reports as well -- matches with the photographs, you know.
>
> I had to make sure I viewed all the material that was provided to me for consistency and just to see that it makes sense and that the actual engineering principles can back that up. And that's what I did in this case, and that's how I was able to form my opinions.

[DE 54-3, p. 84, line 23 to p. 85, line 8].

> … I was able to form my opinions without the inspection. I believe I still would have drawn the same conclusions if there was an inspection, but I was fully capable of performing or providing opinions without a physical inspection.

[DE 54-3, p. 27, lines 9 to 14].

> Again, in this specific case, while I didn't do my own inspection, there were inspections performed previously by others, and there's some pretty thorough documentation that was provided. So in this case specifically, as part of the research accumulation, I definitely reviewed all these documents, all the reports, photographic evidence, and I used that, in addition to a permit history search that I conducted.
>
> I think I mentioned this already. But I reviewed the sewer scope videos that were provided as well. All of that is part of the research and data accumulation.
>
> From there, obviously, I had a hypothesis at that point of what's going on. So to test and analyze that hypothesis, I then analyzed all the provided and researched facts and documentation. And as part of that analysis and cooperation, with my experience, my education, things like that, I was able to analyze and deduce, with a reasonable degree of engineering certainty, the conclusion in this matter.

[DE 54-3, p. 38, line 21 to p. 39, line 16].

Courts routinely permit experts Saxe to form opinions based on evidence created by others, including documents, reports, photographs, and videos. For example, in *Monterey at Malibu Condo. Ass'n v. Empire Indemn. Ins.,* No. 20-CV-24587, 2022 WL 1197414, (S.D. Fla. Apr. 22, 2022), a property damage case, the plaintiff's damage appraisal expert could base his opinions on information contained in inspection reports created by the plaintiff's public adjuster. As Judge Bloom succinctly stated in *Monterey*, "experts may rely on the opinions of others to form their own opinions." *Id.* at *15 (citing *Daubert,* 509 U.S. at 592*; AMCO Ins. v. TAF, Inc.*, No. CV 617-022, 2018 WL 4624097, at *11 (S.D. Ga. Sept. 26, 2018) ("The fact that [the expert witness] used information from other sources does not disqualify him as an expert.")).

Here, Mr. Saxe relied on inspection reports, photographs, and videos created by Great Lakes' field adjuster (Johns Eastern Company), J'Cam's public adjuster (Southern Public Adjusters), plumbers that inspected the property for Great Lakes (Joe Cole Plumbing) and J'Cam (All 4 One Construction & Plumbing), and the water and mold remediation companies that mitigated the damage to J'Cam's property (WaterBAN Restoration and Indoor Environmental Restoration Now). [DE 54-2, pp. 4-5; DE 54-3, pp. 37-38, 84-85, 27, 38]. These are *exactly* the

types of materials that an engineer relies on to determine the cause of property damage. *See Monterey, supra.*

Indeed, Great Lakes' expert engineer relied on the same documentary materials as Mr. Saxe (plus a site inspection) to form his causation and damage opinions. *See* **Ex. A** — Defense Engineering Expert Report, pp. 1-2 of 20. That Great Lakes' expert relies on the same documentary evidence as Mr. Saxe "supports a finding that such methodologies are reasonably reliable." *Rothschild v. Great N. Ins.,* No. 21-CV-23148, 2022 WL 11204272, at *15-16 (S.D. Fla. Oct. 18, 2022) (citing *Paramount Disaster*, No. 2:16-CV-14566, 2017 WL 11632214, at *3 ("While Plaintiff's expert's methodology is not dispositive, where both experts, who are both engineers, employed a similar process to assess the cause of property damage, that fact suggests at least some degree of reliability."); *Clena Invs.* v. XL Specialty Ins., 280 F.R.D. 653, 663-64 (S.D. Fla. 2012)).

The ruling in *Guzman v. Holiday CVS,* No. 21-23021-CIV-WILLIAMS/MCALILEY, 2022 WL 10043004 (S.D. Fla. Oct. 17, 2022) is instructive here. In *Guzman*, the court rejected the argument that an expert's opinions were unreliable because they "never physically inspected" the scene of the incident and, instead, relied on the "work of others to arrive at her opinions." *Id.* at *6. Yet the *Guzman* court ruled that the expert's testimony ***was*** admissible because the expert "explained her methodology in detail and the sources she used to arrive at her opinions." *Id.*

In his deposition and report, Mr. Saxe provided detailed explanations on *what* evidence he relied on to form his opinions and *how* that evidence guided his analysis. [DE 54-2, pp. 36-30; DE 54-3, pp. 50-65, 94-98 (plumbing reports, videos and photographs); pp. 66-89 (field adjuster reports and photographs); pp. 144-153 (mitigation reports and photographs). Whether Mr. Saxe *also* should have performed a site inspection becomes a question of weight, not admissibility. *See Rahmings v. Essary*, No. 10-cv-716, 2012 WL 12910264, at *4 (M.D. Fla. Feb. 3, 2012) ("The

fact that [expert] himself conducted no experiments and based his conclusion on photographs from the accident scene will no doubt affect the weight the jury gives to the testimony, but does not render his testimony inadmissible."); *Companhia Energetica Potiguar v. Caterpillar*, No. 14-242777-CIV, 2017 WL 10775768, at *6 (S.D. Fla. June 12, 2017) ("The fact that an expert did not personally inspect the scene of an incident or physically inspect all allegedly defective products is not by itself determinative; personal inspections are not necessarily required.") (internal citations omitted).

At bottom, Mr. Saxe's testimony is reliable under *Daubert* and Rule 702, and the motion should be denied on this ground. *See Rothschild* at *15 ("The Court therefore agrees with other courts that have considered this issue and found that an engineer's use of techniques of visual inspection, code review, and reliance on experience and expertise can satisfy the Daubert reliability prong.") (internal citations and quotation marks omitted).

**Helpfulness.** Though related, the reliability and helpfulness prongs of the *Daubert* analysis are different and must be analyzed separately. *See Simmons v. Ford Motor Co.*, 576 F. Supp. 3d 1136, 1141 (S.D. Fla. 2021) ("While 'there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them.'") (quoting *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)). Thus, question for the Court on the helpfulness prong is whether Mr. Saxe's opinions on what caused the damage to J'Cam's property has a "valid scientific connection to the pertinent inquiry" in the case. *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009).

That said, Great Lakes bends the analysis into a perfect circle by arguing that Mr. Saxe's opinions will not be helpful because they are unreliable:

> Accordingly, it is apparent that Mr. Saxe's opinions are not based on sufficient facts or data, a reliable scientific methodology, or a reliable application of any such methodology to the evidence upon which Mr. Saxe claims to rely, ***along with failing to provide assistance for the trier of fact where the Report*** offers no supportable conclusion of its own beyond copying and pasting from other sources, much less the reasons for conclusions as required by Rule 26(a)(2)(B).

[DE 54, p. 10] (emphasis added).

Setting aside Great Lakes' misapplication of the law, Mr. Saxe's report and deposition testimony show that he is providing technical engineering opinions on the central issue in the case: what "caused" J'Cam's property damage. This testimony will be critical to the jury's ultimate question of liability—whether J'Cam suffered a covered loss under its insurance policy with Great Lakes. Therefore, Mr. Saxe's testimony will be helpful to the jury under *Daubert*, and the motion should be denied on this issue.

WHEREFORE, J'Cam respectfully requests that the Court deny Great Lakes' motion and grant any other relief it deems proper under the circumstances.

Dated: August 5, 2024.

Respectfully submitted,

/s/ Ryan C. Tyler
RYAN C. TYLER
Florida Bar No. 121934
UNTIEDT DABDOUB & TYLER, PLLC
1600 Ponce de Leon Blvd., Tenth Floor
Coral Gables, Florida 33134
Telephone: (305) 330-2397
ryan@udtlegal.com
eservice@udtlegal.com
-and-
BRITTANY QUINTANA MARTI
Florida Bar No. 98746
QUINTANA LAW, P.A.
237 S. Dixie Highway, Suite 426
Coral Gables, Florida 33133
Telephone: (305) 376-0821
brittany@quintanalawpa.com
paralegal@quintanalawpa.com